The Honorable James P. Donohue

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| BIOPURE HEALING PRODUCTS, LLC<br>*Plaintiff*<br><br>v.<br><br>WELLNX LIFE SCIENCES, INC. and PLATINUM US DISTRIBUTION, INC. d/b/a WELLNX LIFE SCIENCES, USA<br>*Defendants* | **CIVIL ACTION NO.:**<br>**2:17-cv-00470-RSL-JPD**<br><br>**DEFENDANTS' SUBMISSION IN SUPPORT OF REQUEST FOR BOND IN THE AMOUNT OF $474,400 USD** |

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD)

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

**TO THE HONORABLE MAGISTRATE JUDGE:**

Defendants WellNX Life Sciences, Inc. and Platinum Distribution, Inc. d/b/a WellNX Life Sciences, USA (collectively, "Defendants" or "WellNX"), through their undersigned counsel, hereby respectfully provide this Submission in Support of Request for Bond in the Amount of $474,400.00 USD.

## I.   INTRODUCTION

In order to comply with the Preliminary Injunction (Dkt No. 58), Defendants will incur out-of-pocket costs in the amount of $474,000 USD to re-label and repackage approximately 200,000 units of existing inventory. Under the applicable law in this Circuit, Plaintiff BioPure Healing Products, LLC ("BHP") must be required to post a bond in that amount. *See, e.g., LifeScan, Inc. v. Shasta Techs., LLC,* 2013 U.S. Dist. LEXIS 88489 (N.D. Cal. June 23, 2013) ("The Court concludes that a bond should compensate Defendants both for the costs of changing the packaging advertisements at issue and for any profits lost as a result of the injunction.").

In assessing the amount of the bond, the Court must consider evidence of the financial ramifications of entering a preliminary injunction. *Masters Software, Inc. v. Discovery Communs., Inc.*, 725 F. Supp. 2d 1294, 1308-1309 (W.D. Wash. 2010). Concurrently with this Submission, Defendants provide evidence of their actual, out-of-pocket costs to comply with the Preliminary Injunction. Defendants have approximately 200,000 units of existing inventory with the "BioPure" name on the bottle labels and packaging. It cannot be disputed that the Preliminary Injunction will cause Defendants to incur out-of-pocket costs to re-label and repackage their existing inventory. As described in the declaration of Dana Johnson filed concurrently herewith, those costs will total $474,000 USD. Consequently, Defendants hereby request that the Court issue a bond in the amount of $474,400 USD in order to ensure that Defendants are fairly compensated for their hardship and costs of complying with Preliminary Injunction should they ultimately prevail on the merits in this matter.

## II.   RELEVANT FACTS

In an Order dated August 24, 2017, Judge Lasnick, after considering, among other things,

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 2

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

the submissions of the parties in connection with Plaintiff's Motion for Preliminary Injunction (*Docket Entry Nos. 20-22, 40-43, 48*), along with the Report and Recommendation of the Honorable James P. Donohue (*Docket Entry No. 49*) (hereinafter, "7/6 R&R"), as well as Defendants' Objections thereto (*Docket Entry No. 54*), granted Plaintiff's Motion for Preliminary Injunction (*Docket Entry No. 58*) (hereinafter, "8/24 PI Order").

The 8/24 PI Order preliminarily enjoined WellNX, effective thirty (30) days from the date of the 8/24 PI Order (i.e., by September 23, 2017).[1] Compliance with the Preliminary Injunction will cause Defendants to suffer substantial harm and out-of-pocket costs. As detailed in the Declaration of Dana Johnson ("Johnson Decl.") filed concurrently herewith, Defendants have approximately 200,000 units of inventory of SLIMQUICK® Pure Products[2] with the BioPure green tea™ designation on the label and package remaining on hand. Johnson Decl. at ¶3. In order to comply with the Preliminary Injunction, Wellnx is required to re-label and re-box those 200,000 units. That process requires buying new bottles (as the process of removing the label, essentially, renders the old bottles useless), new labels and new boxes. *Id*. These hard costs and labor are as follows:

1) Costs of existing bottles, labels, and packages that must be destroyed ($86,000);

2) Costs of new bottles, labels and packages ($86,000);

3) Labor costs to un-package and repackage the inventory ($182,000);

4) Third-party vendor overage charges ($70,400); and

5) Costs of excess labels, bottles, and packaging that were to be used to package and label

---

[1] The 8/24 PI Order enjoins WellNX from: "[u]sing 'BioPure' or any term or mark confusingly similar to 'Bio Pure', in connection with the advertisement, promotion, distribution, offering for sale or selling of any goods or services involving or relating to tea, including without limitation the use of 'BioPure' in connection with the green tea ingredient of SlimQuick Pure products" and "[p]erforming any acts or using any trademarks, names, words, images or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that plaintiff or any authorized user of the BIOPURE Mark and defendants are one and the same or are in some way connected or that plaintiff is a sponsor of defendants or that the goods or services of defendants originate with plaintiff or any authorized user of the BIOPURE Mark or are likely to lead the trade or public to associate defendants with plaintiff" (hereinafter, "Preliminary Injunction").

[2] All capitalized terms, unless otherwise indicated, shall be given the definition set forth in Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction. *Docket Entry No. 40*.

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 3

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

products, but now must be destroyed. *See* Johnson Decl. at ¶¶4-8 and Exhibits A-B. The total amount of these out-of-pocket costs to comply with the Preliminary Injunction is $474,400 USD. *Id*. at ¶8.

Per the 7/6 R&R, WellNX conferred with Plaintiff BHP regarding the harm that WellNX will suffer as a result of the Preliminary Injunction and the appropriate bond; however, the parties have been unable to reach an agreement on the monetary value of the bond.

### III.    ARGUMENT

#### A.    Legal Standard for Issuance of Bonds

Under Federal Rule of Civil Procedure 65(c), a court is empowered to issue a preliminary injunction, but only so long as "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In setting the appropriate amount of security, a court has "wide discretion". *Masters Software, Inc. v. Discovery Communs., Inc.*, 725 F. Supp. 2d 1294, 1308 (W.D. Wash. 2010). However, "the court must consider evidence of the 'potential financial ramifications of entering a preliminary injunction.'" *Id.* at 1308-1309, quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999).

#### B.    Defendants Will Suffer Substantial Harm and Out-of-Pocket Costs as a Result of the Wrongfully Issued Preliminary Injunction

In assessing the proper bond amount in cases involving claims of intellectual property infringement, and particularly in the trademark infringement context, courts within the Ninth Circuit have considered the following factors, among others: the defendant's tangible costs incurred as a result of the injunction, including, without limitation, the costs of re-branding and/or a change in name, the design and creation of new advertising and packaging, and the shipment and storage of new and remaining inventory; defendant's investment in its brand and/or product; and defendant's lost sales resulting from the issuance of the injunction. *See, e.g., LifeScan, Inc. v. Shasta Techs., LLC,* 2013 U.S. Dist. LEXIS 88489 (N.D. Cal. June 23, 2013) ("The Court concludes that a bond should compensate Defendants both for the costs of changing

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 4

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

the packaging advertisements at issue and for any profits lost as a result of the injunction."); *Well Care Pharmacy II, LLC v. W' Care, LLC*, No. 2:13-cv-00540-GMN-VCF, 2013 U.S. Dist. LEXIS 89771 (D. Nev. June 24, 2013) (in amount of bond, the court considered that defendants would be required to re-brand its store with a new name and incur costs associated with replacing signage, along with expenditures on advertising); and *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161 (C.D. Cal. 2017) (Court considered the tangible costs that the defendant would incur as a result of the preliminary injunction, including "costs to (a) ship its product currently in. . .stores and distribution centers, and (b) store current. . .products that could potentially be re-sold."); *see also Cybermedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079-80 (N.D. Cal. 1998) (a computer software copyright infringement action wherein the court considered the profits that defendants would have earned on sales during the period of the injunction; out-of-pocket expenses related to promotion of the defendant's infringing product; damage to defendants' reputation; and expenses associated with the recall of the infringing product).

Here, Defendants have provided tangible evidence in support of the out-of-pocket costs that they will incur to comply with the Preliminary Injunction. *See generally* Johnson Decl. Specifically, Wellnx will be required to re-label and re-box 200,000 units of existing inventory. Johnson Decl. at ¶3. That process requires buying new bottles (as the process of removing the label, essentially, renders the old bottles useless), new labels and new boxes. *Id*. The total amount of Defendants' out-of-pocket costs to comply with the Preliminary Injunction is $474,400 USD. *See* Johnson Decl. at ¶¶4-8; Exs. A-B. Accordingly, the bond amount must include the Defendants' costs of the injunction. *See, e.g.*, *Korum Auto. Grp., Inc. v. Salstrom Motors Inc.*, No. CV11-5690BHS, 2012 WL 135414, at *4 (W.D. Wash. Jan. 17, 2012) (ordering $100,000 bond to cover "the expenses Defendants are likely to incur in complying with this injunction"). For instance, in *CytoSport, Inc. v. Vital Pharm., Inc.* the court the considered similar compliance costs for a company to repackage and dispose of its current inventory of dietary supplement products and set the bond at $500,000. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051 (E.D. Cal. 2009).

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 5

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

Additionally, a bond in the amount of $474,400 USD is not only appropriate in light of the evidence of Defendants' out-of-pocket costs, but also is commensurate with bonds that have been ordered in other intellectual property cases in this Circuit. *See, e.g.*, *Topline Corp.,* 2007 U.S. Dist. LEXIS 58983 (court ordered posting of $1 million bond); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, No. CV-14-085-LRS, 2014 U.S. Dist. LEXIS 67634 (E.D. Wash. May 14, 2014) ($1.8 million bond); *LifeScan, Inc.*, 2013 U.S. Dist. LEXIS ($3,684,776 bond); *see also Cybermedia, Inc.,* 19 F. Supp. 2d 1070 ($ 1.63 million bond).   In sum, it is clear that the bond Defendants seek is just and proper under the circumstances of this case, particularly given the evidence on the record, as well as the evidence submitted herewith.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiff should be required to post a bond in the amount of $474,400 USD in light of the harm and out-of-pocket costs that Defendants will suffer as a result of the issuance of the Preliminary Injunction.

Dated: September 7, 2017               Respectfully submitted,

BY:   /s/ *Stephen J. Kennedy*
Stephen J. Kennedy, WSBA #16341
stevekennedy3161@gmail.com
18214 13th Place West
Lynnwood, WA 98037
Telephone: 206-484-1310
*Attorney for Defendants*

**EPSTEIN DRANGEL LLP**
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391
*Attorneys for Defendants,*
*Pro Hac Vice*

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 6

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310

# CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2017, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to the following counsel of record:

Marc C. Levy: MarcL@SeedIP.com

Thomas Shewmake: TomShewmake@SeedIP.com

Dated: September 7, 2017

>                               BY:   /s/ *Stephen J. Kennedy*
>                               Stephen J. Kennedy, WSBA #16341

Defendants' Submission in Support of Bond (Case No. 2:17-cv-00470-RSL-JPD) - 7

Stephen J. Kennedy
Attorney at Law
18214 13th Place W.
Lynnwood, WA 98037
(206) 484-1310