1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Honorable Robert S. Lasnik

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BIOPURE HEALING PRODUCTS, LLC

        Plaintiff,

v.

WELLNX LIFE SCIENCES, INC. and
PLATINUM US DISTRIBUTION, INC. d/b/a
WELLNX LIFE SCIENCES, USA

        Defendants.

Civil Action No.: 2:17-cv-00470-RSL/JPD

**PLAINTIFF'S SUBMISSION ON
PRELIMINARY INJUNCTION BOND**

**INTRODUCTION**

        Plaintiff BioPure Healing Products, LLC ("BioPure") respectfully requests that this

Court set a bond no more than sufficient to cover the reasonable relabeling and repackaging

costs of complying with the preliminary injunction that the Court has ordered. As discussed

more fully below, based on the inventory figures and materials costs provided by defendants,

BioPure believes that the reasonable cost to Defendants Wellnx Life Sciences, Inc. and

Platinum US Distribution, Inc. d/b/a Wellnx Life Sciences, USA (collectively, "Wellnx") of

complying with the injunction will be no more than $45,000. This is based on an analysis of the

repackaging project conducted by BioPure's CEO, Mr. Joseph Annicchiarico, who has many

years of experience in product manufacturing and packaging for consumer and professional

products in the health, beauty and pharmaceutical industries, including nutritional supplements.

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND.................................................. 1

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1

2

Declaration of Joseph Annicchiarico in Support of Plaintiff's Submission on Bond, ¶¶ 1-10

3

("Annicchiarico Decl.").

4

Wellnx, on the other hand, in what appears to be an attempt to impede BioPure's access

5

to the injunctive relief this Court has granted, appears poised to request an exorbitant bond --

6

first proposed at $850,000 and then just today revised to somewhere between $414,000 and

7

$484,000 -- highly inflated and unreasonable figures that Wellnx knows will be difficult for a

8

small company like BioPure to obtain. Further, despite repeated assurances from Wellnx during

9

the meet and confer process that it would provide documentation supporting its bond proposals,

10

Wellnx failed to provide any such documentation to BioPure, raising questions concerning the

11

credibility of Wellnx's changing positions.

12

In view of these circumstances, as well as this Court's findings that BioPure has a

13

strong likelihood of succeeding on the merits of its claims and that preliminary injunctive relief

14

will benefit the public, the relevant Ninth Circuit case law instructs that this Court need not

15

require anything more than a minimal bond. Accordingly, BioPure respectfully requests that

16

the Court exercise its discretion to enter set a bond amount of no more than $45,000.

17

**FACTUAL BACKGROUND**

18

**A. Complying with the Injunction**

19

On August 24, this Court granted Plaintiff BioPure's motion for a preliminary

20

injunction with respect to Wellnx's infringement of Plaintiff's BIOPURE trademark. The terms

21

of the injunction require, *inter alia*, that Wellnx be enjoined or restrained from:

22

    1. Using "BioPure" or any term or mark confusingly similar to "BioPure", in

23

       connection with the advertisement, promotion, distribution, offering for sale
       or selling of any goods or services involving or relating to tea, including

24

       without limitation the use of "BioPure" in connection with the green tea
       ingredient of Defendants' SlimQuick Pure products; and

25

    2. Performing any acts or using any trademarks, names, words, images or

26

       phrases that are likely to cause confusion, to cause mistake, to deceive or
       otherwise mislead the trade or public into believing that plaintiff or any

27

       authorized user of the BIOPURE Mark and defendants are one and the same

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND.................................................. 2

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1

2

3

> or are in some way connected or that plaintiff is a sponsor of defendants or that the goods or services of defendants originate with plaintiff or any authorized user of the BIOPURE Mark or are likely to lead the trade or public to associate defendants with plaintiff.

4 Doc. 58 at 2.

5       To comply with the injunction, Wellnx will need to relabel and/or repackage the

6 Slimquick Pure products in its current U.S. inventory that currently use the BIOPURE name

7 (the "Enjoined Products"). There are three different types of product packages used for the

8 Enjoined Products. The first type consists of Slimquick Pure products sold in labelled plastic

9 containers bearing the BIOPURE mark without any additional packaging ("Product A"). *See*

10 Annicchiarico Decl., ¶ 12. An example of Product A is the Slimquick Pure Extra Strength

11 Gummies, as shown here:

12

13

14

15

16

17

18

19

20

21

22



23

24 *Id.* To comply with the injunction, Product A will require a new label.

25       The second type of product packaging consists of labelled plastic bottles which are

26 packed in secondary packaging consisting of a cardboard carton ("Product B"). Annicchiarico

27 Decl., ¶ 13. In the case of Product B, the BIOPURE mark appears on both the label on the

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND................................................. 3

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1

2

3

bottle and on the cardboard carton. An example of Product B is Slimquick Pure diet

supplements in caplet form as shown here:

4

5

6

7

8

9

10

11

12

13

14



15

16

*See* Annicchiarico Decl., ¶ 13. To comply with the injunction, Product B will require a new

label and a new outer carton.

17

18

19

20

The third type of product packaging consists of a cardboard carton containing small

packages inside which do not contain the BIOPURE mark ("Product C"). *See* Annicchiarico

Decl., ¶ 14. An example of Product C is the Slimquick Pure drink mix, as shown here:

21

22

23

24

25

26

27

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND.................................................. 4

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1
2
3
4
5
6
7
8
9
10
11



12

*Id.* To comply with the injunction, Product C will require a new carton only.

13

### B. The Parties' Meet and Confer Communications

14

The Court's August 24th order granting BioPure's motion for preliminary injunction

15

fully adopted the Report and Recommendation ("R&R") issued by Magistrate Judge Donohue

16

on July 7, 2017. Under the terms of the R&R, Judge Donohue directed the parties to meet and

17

confer within fourteen days of this Court's granting of Plaintiff's motion in order to discuss an

18

appropriate amount of a bond. Doc. 49 at 29. Judge Donohue further directed the parties that,

19

should they fail to stipulate to an amount, the parties should provide the Court with separate

20

submissions explaining their positions within that same fourteen day period. *Id.*

21

On Tuesday, August 29, 2017, five days after this Court granted BioPure's motion,

22

counsel for BioPure and Wellnx conferred by telephone to discuss the bond amount.

23

Declaration of Marc Levy ("Levy Decl."), ¶¶ 3-5; Ex. A. Counsel for Wellnx stated that

24

Wellnx would be seeking an $850,000 bond. *Id.* Counsel for Wellnx explained that $570,000 of

25

this figure represented the expected cost of repackaging Wellnx's current inventory of

26

approximately 300,000 units of the Enjoined Products based on a $1.90 per unit bid that

27

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND................................................. 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Wellnx received from a vendor. Levy Decl., ¶ 5. The remainder of the $850,000 proposed amount consisted of $70,000 in anticipated lost online sales and $200,000 in expected future penalties charged by retailers for late shipments. *Id.*

During the telephonic meet and confer, BioPure's counsel requested copies of the documentation supporting these figures so that BioPure could evaluate and respond to BioPure's proposal. *Id.* Wellnx's counsel assured BioPure's counsel during the call that they would provide the requested documentation. *Id.* The next day, BioPure's counsel confirmed the substance of the meet and confer and reiterated the request for documentation to evaluate Wellnx's proposal. *Id.* ¶ 6; Ex. B. Counsel for Wellnx did not respond to the email. *Id.* ¶ 7.

Two days later, on Friday, September 1, 2017, counsel for BioPure sent an additional email to counsel for Wellnx, again requesting the promised documentation so that BioPure would have time to respond prior to the deadline for the parties' submissions. *Id.*; Ex. B. No immediate response was received. *Id.*

Four days later, on Tuesday, September 5, 2017, counsel for Wellnx finally responded, stating that they would be able to provide the documentation the next day, Wednesday, September 6, 2017—one day prior to the deadline for the parties' submissions to this Court. *Id.* ¶ 8; Ex. B. In the same email, Wellnx's counsel also stated, quite unexpectedly, that Wellnx would be "OK" with stipulating to a one-week extension of the deadline for the parties' submissions. *Id.* Counsel for BioPure responded a short time later, expressing confusion over the fact that Wellnx had not yet provided the documentation that it understood was already in Wellnx's possession. *Id.* ¶ 9; Ex. B. Nevertheless, counsel for BioPure also stated that they looked forward to receiving the documentation the following day and that BioPure was not interested in an extension at that time. *Id.*

In response, counsel for Wellnx then denied ever having definitively stated that the documentation was in Wellnx's possession. *Id.* ¶ 10; Ex. B. In a rather bizarre turn, counsel for Wellnx further stated that "[i]f we are wasting our time and there is not going to be a good faith

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND.............................................. 6

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

discussion, please let us know and we won't bother sending anything at all." *Id.* Counsel for BioPure quickly responded, assuring counsel for Wellnx that BioPure had fully intended to have a good faith discussion about the bond, but that BioPure simply needed the requested documentation in order for that good faith discussion to occur. *Id.* ¶ 11; Ex. B. On the assumption that Wellnx would provide the requested documentation the following day, as promised, counsel for BioPure suggested that the parties have another meet and confer at 10:00 a.m. Eastern today, Thursday, September 7, 2017. *Id.*

Yet, Wellnx once again failed to deliver any documentation to counsel for BioPure, as promised. Nevertheless, counsel for both parties attended the second meet and confer at the scheduled time on September 7th. *Id.* ¶ 15. Counsel for Wellnx provided several significant last-minute revisions to its cost estimates on the call. Notably, this included revising the current estimated inventory number from 300,000 down to 200,000. *Id.* ¶ 16. Further, with respect to packaging costs, Wellnx's counsel provided the following new per unit charges: $0.185 per unit for the cost of new bottles and caps; $0.035 per unit for the cost of new labels; and $0.21 per unit for the cost of new cartons. Counsel for Wellnx also claimed that these per unit costs would essentially need to be doubled to account for new, non-infringing packaging as well as the costs of existing packaging that needed to be destroyed. Counsel for BioPure noted that this doubling of costs made no sense because Wellnx would have to pay for packaging costs regardless of the injunction; the cost of complying with the injunction is simply the additional repackaging costs. *Id.*

Counsel for Wellnx further provided a labor cost estimate of $0.91 per unit. *Id.* ¶ 17. Again, no detailed justification of this cost was provided. *Id.* Counsel for Wellnx further stated that these combined materials and labor costs could be increased by as much as twenty percent as a result of a vaguely described "contingency charge," thereby presenting an alleged range for costs of materials and labor from $354,000–$424,800. *Id.* ¶ 18. Counsel for Wellnx also advised that there would be an additional estimated cost of $10,000 to update Wellnx's

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND.............................................. 7

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1

2    commercials, as well as an addition $50,000 packaging cost, thereby bringing Wellnx's total

3    claimed costs to the range of $414,000–$484,800 . *Id.*

4         Counsel for BioPure advised Wellnx's counsel that based on an evaluation by Mr.

5    Annicchiarico these new last-minute estimates still appeared to be highly inflated and

6    unreasonable, and that BioPure could not agree to a stipulated bond amount in Wellnx's

7    estimated range. *Id.* ¶ 19. This is particularly true in view of the fact that, as of the filing of this

8    submission, Wellnx failed to provide BioPure with any documentation whatsoever to

9    substantiate Wellnx's claimed costs for complying with the injunction. *Id* ¶ 20. Accordingly,

10   the parties were unable to reach an agreement on the bond amount, and BioPure hereby submits

11   its position with respect to the setting of a preliminary injunction bond.

12                                    **LEGAL STANDARD**

13        Fed. R. Civ. P. 65(c) states that a court may issue a preliminary injunction "only if the

14   movant gives security in an amount that the court considers proper to pay the costs and

15   damages sustained by any party found to have been wrongfully enjoined or restrained."

16   Nevertheless, district courts have great discretion in setting the bond amount and are free to

17   require no bond or only a nominal bond when appropriate. *See People of State of Cal. ex rel.*

18   *Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985);

19   *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court

20   with discretion as to the amount of security required, *if any*.") (emphasis in original) (citations

21   omitted).

22        The burden is on the party requesting on the bond to prove that a bond is needed, so that

23   a district court may exercise its discretion in setting the amount of the bond. *Conn. Gen. Life*

24   *Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) ("We do not . . .

25   believe that the language of Rule 65(c) absolves the party affected by the injunction from its

26   obligation of presenting evidence that a bond is needed, so that the district court is afforded an

27   opportunity to exercise its discretion in setting the amount of the bond."). Thus, a bond is

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND................................................. 8

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

inappropriate where the party to be enjoined fails to provide reliable evidence of any damage it alleges it will suffer upon entry of the injunction. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000); *1st Tech, LLC v. Bodog Entm't Group S.A.*, No. C08-0872-JCC, 2008 U.S. Dist. LEXIS 76189, *27-28 (W.D. Wash. Sept. 30, 2008) ("The Court finds no evidence that Defendants will suffer damages from being enjoined from further transfer of the trademarks. Accordingly, the Court sets the bond at zero."); *Masters Software, Inc. v. Discovery Commc'ns, Inc.*, 725 F. Supp. 2d 1294, 1308-09 (W.D. Wash. 2010) (court rejected request for a $10 million bond that was based on vague evidence and appeared to be selected arbitrarily and instead set the bond at $10,000).

Additional factors may also counsel for reducing or eliminating the bond. For example, the moving party's size and financial resources may be considered in setting a reduced bond amount. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (district court did not abuse discretion by requiring a $25,000 bond and defendants request to significantly raise that amount "would risk denying [the plaintiff] access to judicial review since the preliminary injunction would not take effect until [the plaintiff] posted the bond"); *Color Me House, Inc. v. Discovery Commc'ns, Inc.*, No. C12-5935 RJB, 2013 U.S. Dist. LEXIS 44234, at *27-28 (W.D. Wash. Mar. 27, 2013) (in a trademark case, the court agreed that a small bond of $1,000 should be required because the plaintiff "has shown a strong likelihood of success on the merits, it is a small business, and it does not have the resources to purchase a large bond").

Furthermore, where a district court has found a likelihood of success on the merits, "a minimal bond or no bond at all" is favored. *Van De Kamp*, 766 F.2d at 1325; *see also Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982), *aff'd.*, 919 F.2d 549 (9th Cir. 1990) ("A strong likelihood of success on the merits similarly negates the need for security"). A bond may similarly be reduced or eliminated "in cases involving enforcement of federal statutes enacted to protect a clear 'public interest.'" *FTC v. Equifin Intl'l*, No. CV 97-4526-

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND................................................ 9

DT(CWx), 1997 U.S. Dist. LEXIS 10288, at *39 (C.D. Cal. July 3, 1997) (citing *Pharm. Soc. of New York, Inc. v. New York State Dept. of Social Services*, 50 F.3d 1168, 1174-75 (2d Cir. 1995)).

### DISCUSSION

Here, as the enjoined party requesting a bond from the Court, the burden falls entirely on Wellnx to support the amount it has requested. *See Conn. Gen. Life Ins.*, 321 F.3d at 883. As of the writing of this submission, Wellnx has failed to provide any documentation to support the $850,000 bond that it proposed during the parties' meet and confer telephone conference on August 29, 2017 or the revised $414,000–$484,800 bond that it proposed during the parties' second meet and confer telephone conference on September 7, 2017. Accordingly, BioPure is unable to directly respond to any documentation that Wellnx may have to support its requested amounts. Because consideration of such documentation would be unfairly prejudicial to BioPure, particularly in view of BioPure's repeated requests for it and Wellnx's unsatisfied promises to provide it, BioPure respectfully requests that the Court disregard any such documentation submitted by Wellnx.

Despite the lack of documentation from Wellnx, it is clear that Wellnx has greatly inflated its estimated costs for complying with the Court's injunction. BioPure's CEO, Mr. Joseph Annicchiarico, has extensive experience in the manufacturing and packaging (including re-packaging) of consumer and professional products in the health, beauty and pharmaceutical fields, including nutritional supplements. Annicchiarico Decl., ¶¶ 1-10. Using the inventory and material costs that Wellnx provided today, Mr. Annicchiarico provides a detailed analysis of both the materials and labor costs that are likely to be incurred by Wellnx in order to relabel and/or repackage the products subject to the injunction. *Id.* ¶¶ 11-21.

Regarding materials, Mr. Annicchiarico concludes that Wellnx should not need to spend more than $33,000 on materials to repackage its current inventory of 200,000 units of enjoined products. *Id.* ¶ 16. This is based on using the materials costs that Wellnx provided today to the

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

200,000 units of inventory. *Id.* Wellnx's additional claim for material costs for a new bottle and new cap are not required to comply with the injunction.  The bottles themselves do not display the BIOPURE name, only the labels placed on them.  *Id*. at 17.

Mr. Annicchiarico also estimates that the associated labor costs involved in repackaging the enjoined products should not exceed $12,000. *Id*. ¶¶ 18-20.  This is based on reasonable assumptions including a team of 5 persons replacing 4 labels per minute and laborers being paid $10 per hour. *Id*. ¶ 19. Stated in terms of units, the labor charge is 6 cents per unit ($12,000 divided by 200,000 units).  The per unit labor cost figure provided today by Wellnx, by contrast, is 91 cents per unit ($182,000 for 200,000 units of inventory).  This is an absurdly high figure.  Mr. Annicchiarico explains that based on his reasonable estimate of the time to replace a label (4 labels per minute), Wellnx's labor rate translates to more than $218 per hour, more than twenty times the going rate for this type of work  Annicchiarico Decl., ¶ 20.

Thus, based on his extensive experience and relying on the materials costs provided by Wellnx, Mr. Annicchiarico has concluded that Wellnx should not need to spend more than $45,000 to comply with the injunction. *Id.*

This estimate is actually at the high end of bond amounts required in other trademark cases in the Ninth Circuit in which a party could relabel or repackage its products in order to comply with a preliminary injunction. *See, e.g.*, *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183-84 (C.D. Cal. 2010) ($20,000 bond where defending had option of repackaging in order to comply with preliminary injunction); *Honor Plastic Indus. Co. v. Lollicup USA, Inc.*, 462 F. Supp. 2d 1122, 1132-33 (E.D. Cal. 2006) ($36,000 bond where defendant was free to continue selling products without the infringing trademarks in compliance with the preliminary injunction).

Wellnx's claim that it will likely have to pay penalties charged by retailers for late shipments is speculative and based on unreasonable assumptions. *See Masters Software*, 725 F. Supp. 2d at 1308-09 (rejecting bond request that was based on vague evidence and appeared

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

arbitrary). Wellnx has been on notice of the injunction since July 7, 2017 when Judge Donohue

issued the R&R. Annicchiarico Decl., ¶¶ 18-20. Also, the R&R, which this Court's August 24,

2017 Order adopted in full, specifically stated that the injunction would "take effect thirty (30)

days" after Judge Lasnik's adoption of the R&R "in order to provide defendant with sufficient

time to alter its packaging." Doc. 49 at 28. Based on a worst reasonable case scenario where

Wellnx's inventory of Enjoined Products amounts to only a 3-month supply, Wellnx will have

had more than sufficient time in which to repackage inventory sufficient to meet its shipping

commitments. Annicchiarico Decl., ¶¶ 20-22.

This Court should also consider the size and financial resources of BioPure when

setting the bond. *See, e.g.*, *Color Me House*, 2013 U.S. Dist. LEXIS 44234, at *27-28. BioPure

is a small, closely held company with limited financial resources. Annicchiarico Decl., ¶ 25. A

very large bond amount, such as the $414,000–$484,800 proposed by Wellnx, may prevent

BioPure from being able to receive the relief that the Court has ordered. *Id.* This would cause

enormous harm not only to BioPure, but also to the public. Based on Wellnx's reluctance to

even provide any documentation to support its claim,  the requested bond appears to be nothing

more than a strategy to prevent BioPure from receiving the benefit of the injunctive relief that

the Court has ordered. The Ninth Circuit disapproves of such tactics and instead favors lower

bond amounts that will facilitate a plaintiff's ability to obtain judicial review of its claims. *See*

*GoTo.com*, 202 F.3d at 1211.

Moreover, this Court has determined, after two separate *de novo* reviews of the parties'

preliminary injunction briefing, that BioPure has a strong likelihood of succeeding on the

merits in this case. *See* Doc. 58 at 1 ("The Court, having considered all materials submitted in

support of and in response to plaintiff's Motion for Preliminary injunctions, the Report and

Recommendation of the Honorable James P. Donohue, the relevant law, and the balance of the

record, finds that plaintiff BioPure Healing Products, LLC has shown that it is likely to succeed

on the merits of its trademark infringement and other related claims . . . .") (Lasnik, J.); Doc.49

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND............................................. 12

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON  98104-7092
(206) 622-4900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

at 25-26 ("These factors persuade the Court that plaintiff is likely to succeed in proving that consumers are likely to assume that BioPure is associated with WellNX's weight loss products containing 'BioPure green tea.'") (Donohue, J.). Accordingly, any bond set in this case should be "minimal." *See Van De Kamp*, 766 F.2d at 1325.

Finally, this is a trademark case in which entry of the preliminary injunction will enforce a federal statute that benefits the public by allowing BioPure to retain control over its brand and thereby reduce the likelihood of consumer confusion caused by Wellnx's improper use of the BIOPURE mark. *See* Doc. 58 at 1 ("[T]he public interest supports an injunction.") (Lasnik, J.); Doc. 49 at 28 ("To the extent the public has any interest in the outcome of this case, it is in permitting businesses and business owners who have invested in branding their products from losing control over their brands. In that sense, the public interest favors BioPure.") (Donohue, J.); *see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (noting "public interest in protecting trademarks generally"). This public benefit also counsels in favor of a minimal bond in this case. *See Equifin*, 1997 U.S. Dist. LEXIS 10288, at *39.

## CONCLUSION

Wellnx has proposed a bond that greatly exceeds any reasonable amount that it is likely to incur for repackaging and relabeling the enjoined products in its current inventory. Wellnx's conduct during the meet and confer, including its failure to provide any documentation to support the requested bond despite assurances that it would do so, further undermines Wellnx's credibility concerning its shifting positions on the bond. For these reasons and based on the Court's finding that BioPure has a strong likelihood of succeeding on the merits of its claims and that the preliminary injunction is in the public interest, BioPure respectfully submits that the amount of the preliminary injunction bond should be minimal and, in any event, not exceed $45,000 as the reasonable cost of relabeling and repackaging the Enjoined Products.

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND............................................. 13

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DATED this 7th day of September, 2017,

Respectfully submitted,

_____
Marc C. Levy, WSBA No. 19203
Thomas A. Shewmake, WSBA No. 50765
Seed IP Law Group LLP
701 Fifth Ave., Suite 5400
Seattle, WA 98104
Telephone: (206) 622-4900
Facsimile: (206) 682-6031
Email: marcl@seedip.com
Email: tomshewmake@seedip.com

Attorneys for Plaintiff
BioPure Healing Products, LLC

PLAINTIFF'S SUBMISSION ON PRELIMINARY
INJUNCTION BOND............................................... 14

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2017, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Stephen J. Kennedy
stevekennedy3161@gmail.com

Jason M. Drangel
jdrangel@ipcounselors.com

Ashly E. Sands
asands@ipcounselors.com

Kerry B. Brownlee
kbrownlee@ipcounselors.com


s/Anne Calico
Anne Calico

SEED INTELLECTUAL PROPERTY LAW GROUP LLP
701 FIFTH AVENUE, SUITE 5400
SEATTLE, WASHINGTON 98104-7092
(206) 622-4900